# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DR. SHAMPA MUKERJI**                                       **CIVIL ACTION**

**VERSUS**                                                             **NO.  05-3020**

**SOUTHERN UNIVERSITY OF NEW ORLEANS, ET AL**     **SECTION "J" (3)**
                                                                                   **28 USC § 636(c)**

## ORDER AND REASONS

Before the Court is defendant's Motion for Summary Judgment seeking dismissal of plaintiff's employment discrimination lawsuit in its entirety, contending that plaintiff has failed to adduce evidence demonstrating a *prima facie* case of discrimination or retaliation under either Title VII or Louisiana's Employment Discrimination Law (LEDL), plaintiff has failed to exhaust her Title VII equal pay, hostile work environment and retaliation claims and that, alternatively, her claims are prescribed.  Plaintiff filed formal opposition arguing that she has adduced "direct evidence" of  discrimination, harassment and retaliation, all of her claims were timely filed/administratively exhausted and that material issues of fact preclude summary judgment with respect to her state law claim of intentional infliction of emotional distress.  Defendant filed a formal reply brief and, on December 6, 2006, the matter was the subject of oral hearing. Thereafter, the matter was taken under advisement.  For the following reasons, defendant's Motion for Summary Judgment is GRANTED as set forth below.

1

## I. PROCEDURAL BACKGROUND

On July 19, 2005, the captioned employment discrimination case was removed to this Court from the Civil District Court of the Parish of Orleans by the defendant, The Board of Supervisors of Southern University and Agricultural and Mechanical College (hereinafter "SUNO"). Plaintiff, Dr. Shampa Mukerji, ("Mukerji") alleges that SUNO committed a cornucopia of violations of Louisiana's Employment Discrimination Law (La. R.S. 23:303(A) formerly La. R.S. 23:1006)[1] and Title VII. Plaintiff's claim of intentional infliction of emotional distress (IIED) under La. Civ. Code Art. 2315 is based premised on the same conduct.

Dr. Mukerji alleges quadruple-status discrimination on the basis of her gender (female), race (Asian), national origin (India) and religion (Hindu). The alleged discriminatory conduct consists of disparate treatment (*i.e.*, failure to interview/promote, unequal compensation and unequal access to university assets), hostile work environment and retaliation. Plaintiff's hostile work environment and IIED claims are predicated on the same set of facts. More particularly, plaintiff alleges that SUNO, through her supervisor/Chairman of SUNO's Biology Department, Dr. David S. Adegboye (a black male of Nigerian descent), committed the following discriminatory acts, to wit: (1) denied her equal access to certain university assets; (2) paid her less than allegedly similarly situated temporary professors, including Dr. Yetunde Ogunkoye and unspecified others; (3) failed to promote her to a tenure-track Associate Professor position despite her qualifications by cancelling her June 26th, 2003 interview for the position; (4) forced

---

[1] La. R.S. §§ 23:1006-1008 enacted by Acts 1983, No. 709, § 1, prohibiting intentional discrimination in employment on the basis of race, color, religion, sex, disability and national origin, was repealed effective August 1, 1997 and redisignated by Acts 1997, No. 1409, § 4, *inter alia*. *See*, now, La. R.S. §§ 23:331-334 (race, color, religion, sex and national origin); La. R.S. §23:321-325 (disability).

his Christian religion upon her by recounting a religious story to her during a lengthy car ride to

a university sponsored event in North Louisiana; (5) treated her disparagingly; and (6) suborned

"a regular pattern of verbal abuse by her co-workers."[2]

## II. UNDISPUTED FACTUAL BACKGROUND

In the Fall of 2002, Dr. Mukerji contacted the Biology Chair (Dr. Adegboye) to inquire

about vacant positions.  Plaintiff was then advised that there were no vacancies for positions in

Fall, 2002.  However, plaintiff  was asked and did in fact submit her resume, which Dr.

Adegboye kept on file.  In Spring of 2003, SUNO's enrollment increased and staff positions

became available.[3]

It is undisputed that Dr. Adegboye was the individual who hired Dr. Mukerji based upon

his review of her resume, interview and references from UNO.[4]  Prior to the commencement of

classes (January 21, 2003), Dr. Adegboye contacted Mukerji, and discussed an adjunct part-time

position available teaching night classes.  Because Mukerji had small children, lived in Slidell

and could not teach evening classes, Dr. Adegboye created an adjunct position teaching

Introductory Biology for Non-Majors (Biology 105 and 106) during the daytime.  In order to

accommodate plaintiff's request for daytime classes only, Dr. Adegboye secured the agreement

of another instructor, who was previously scheduled to teach daytime classes, to teach Biology

---

[2]*See* Plaintiff's Complaint as Supplemented and Amended [Doc. ## 1, 14].

[3]*See* Deposition of David S. Adegboye, PhD, taken on October 23, 2006 at p. 27 [Plaintiff's Exhibit "A"].

[4]*See* Deposition of Dr. Shampa Mukerji taken on October 17, 2006 at pp. 82-83 (stating that she contacted Dr. Adegboye, he seemed very interested and that he offered her the adjunct position) [Defendant's Exhibit "1"].

courses in the evening.[5]   Dr. Adegboye met with Dr. Mukerji and she agreed to the terms of the

two contracts ($1700 for each course), *i.e*., the standard rate.[6]

It is uncontroverted that Dr. Mukerji worked as a contract employee of SUNO for a total

of four (4) semesters, to wit:  (1) two contracts to teach Biology 105 and 106 Spring Semester

ending May, 2003; (2) a year long contract (Fall 2003, Spring 2004, Summer 2004) commencing

in August of 2003 as a temporary assistant professor filling the position funded by a National

Institute of Health (NIH) grant (hereinafter the "NIH grant position").

In the interim between plaintiff's  work in India as a fossil botanist in 1990 and her

teaching contract with SUNO, Dr. Mukerji had no research laboratory experience.   It is further

undisputed that plaintiff did not have a specialty in Anatomy, Physiology or Genetics and has

failed to demonstrate that she was otherwise qualified for the positions of Professor of

Anatomy/Physiology or Genetics.

It is undisputed that the positions for Anatomy/Physiology and Genetic Assistant and/or

Associate Professor Positions were advertised in Spring, 2003.[7]   Plaintiff was invited to

interview, however, only for the *fall back* position of Assistant/Associate Professor in General

---

[5]Adegboye Deposition*.,* at pp. 30-31, 34; Memorandum from Dr. Adegboye to Dr.
Mukerji dated April 13, 2004 at item no. 1 (noting the circumstances under which he hired Dr.
Mukerji in January of 2003, including the accommodation of  Mukerji's request for only daytime
classes due to the fact that she had young children and a long commute from Slidell, Louisiana to
SUNO) [Adegboye # 10].

[6]Adegboye Deposition*,* at pp. 38-39; Memorandum of Appointment [Adegboye #2].

[7]Adegboye Deposition, at pp. 65-66; Advertised Positions posted May 5, 2003
[Adegboye #4].

4

Biology.[8]  Leeway was built into the advertised position to allow for the hiring of a General

Biology Assistant Professor without the aforesaid specialities in the event that a sufficient

number of candidates qualified for the preferred  tenure-track positions did not apply.

The advertised qualifications for the "Full-time Tenure-Track" Associate Professor

Position teaching "Anatomy and Physiology," *inter alia*, include the following: (1) doctorate in

Anatomy & Physiology; (2) three or more years teaching at the university level (required); and

(3) expertise in cell or tissue culture technique and  electron microscopy or digital imaging

(preferable).[9]  The advertised qualifications for the subject "Full-time Tenure-Track" Assistant

Professor Position teaching "Genetics," *inter alia*, include the following: (1) Master's Degree in

General Biology with a specialty in Genetics (required); and  (2) Minimum of three years of

university level teaching experience.[10]  It is undisputed that plaintiff fails to meet the objective

qualifications for either of the above advertised tenure-track positions (Anatomy/Physiology and

Genetics).[11]

------------------------------------------------------------

[8]Adegboye Deposition, at p. 66; Correspondence from Dr. Adegboye to Dr. Mukerji dated June 20, 2003 (stating that "you [Mukerji] are invited to interview for the Assistant/Associate Professor in Biology(Anatomy &Physiology) on Thursday, June 26, 2003") [Adegboye #3].

[9]Advertised Positions [Adegboye #4].

[10]*Id.*

[11]*See* Plaintiff's Deposition at pp. 17-28 [Defendant's Exhibit "1"]; Plaintiff's Statement of Undisputed Facts (stating at Item 7 that she holds a B.S. in Biology and Botany, a Masters Degree in Biology and Botany, a B.S. in Education, a Doctorate of Philosophy in Fossil Botany and an Associate's Degree in Nursing); Memorandum dated April 13, 2004 at Item 2 (reiterating in writing that, as a plant biologist, Dr. Mukerji lacked the qualifications for the two advertised faculty positions, Anatomy/Physiology and Genetics, and explaining that she was short-listed/recommended for an interview for General Biology, in the event that there were an inadequate number of qualified applicants for the advertised faculty positions) [Adegboye #10].

On June 7, 2004, more than three hundred days after the plaintiff's interview was cancelled, plaintiff filed a Charge of Discrimination against SUNO with the Equal Employment Opportunity Commission.[12]  Plaintiff claimed that the defendant subjected her to unequal treatment, denied her equal pay and refused in to interview/promote her.  Plaintiff accused the Biology Chair (Dr. Adegboye) of various acts of discrimination based of her race (Asian), sex (female), religion (Hindu) and national origin (Indian).  The particulars of her EEOC claim include the following, to wit: (1) being denied an interview/promotion to Assistant Professor of Biology on June 26, 2003; (2) being denied a research laboratory, an office, an internet connection and a printer in January, 2004; (3) being subjected to a religious discussion by Dr. Adegboye in January, 2004; (4) being denied the money to renew the NIH position and being required to teach summer courses instead of joining the research project in March, 2004; and (5) being denied sick leave in April, 2004.[13]  On March 30, 2005, the EEOC issued a Dismissal and Notice of Suit Rights to plaintiff.[14]

### III. SUMMARY JUDGMENT STANDARD

The principal purpose of Fed. R. Civ. P. 56 is to "isolate and dispose" of factually unsupported claims.[15]  Summary judgment is proper where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no

---

[12]*See* EEOC Charge No. 270-2004-01791filed June 4, 2004 [Defendant's Exhibit 4].

[13]*Id.*

[14]*See* EEOC Dismissal and Notice of Rights dated March 30, 2005 (Exhibit 2 to Defendant's Reply Brief.

[15]*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

genuine issue of material fact...."[16]   There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.[17]

Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[18]   A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.[19] "In such a situation, there can be 'no genuine issue of material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[20]

The Court has no duty to search the record for triable issues.[21]   Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment.[22] Conclusory statements, speculation and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.[23]  "Summary judgment is appropriate in any case 'where critical evidence is so weak

---

[16]Fed. R. Civ. P. 56(c).

[17]*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[18]*Celotex*, 477 U.S. at 323.

[19]*Nebraska v. Wyoming,* 507 U.S. 584, 590 (1993); *Celotex,* 477 U.S. at 323; *Wenner v. Texas Lottery Commission,* 123 F.3d 321, 324 (5th Cir.), *cert. denied,* 523 U.S. 1073 (1998).

[20]*Celotex,* 477 U.S. at 322-23.

[21]*Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[22]*Celotex,* 477 U.S. at 248-50;  *Abbot v. Equity Group, Inc.,* 2 F.3d 613, 619 (5th Cir. 1993).

[23]*Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir. 1996).

or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'"[24]

## IV. ANALYSIS

### *Failure to Promote*

The basis of the plaintiff's failure to promote claim is that, on June 26, 2003, she was passed over for promotion on the basis of her sex, race, national origin and/or religion.  SUNO highlights that the plaintiff was a contract employee and the thrust of its motion for summary judgment is that plaintiff has failed to make out a *prima facie* case based on the failure to promote her to either of the advertised tenure-track faculty positions (*i.e.*, anatomy/physiology or genetics).

In a failure to promote case, the plaintiff must demonstrate the following threshold requirements in order to state a *prima facie* case, to wit: 1) she was a member of a protected class; 2) she applied and was qualified for a position for which applicants were being sought; 3) she was rejected for the position; and 4) the position was either not filled or was filled by someone outside of the protected class.[25]

Plaintiff's membership in a protected group is not in dispute and does not require any further analysis.  However, the remaining elements are in contention.  As aforestated, at issue are two *tenure*-track professor positions (anatomy/physiology and genetics) announced just prior to the summer of 2003.  Plaintiff was "short listed" for an interview but her interview was cancelled by the Search Committee after having determined that Dr. Mukerji was not qualified for either

---

[24]*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075-76 (5th Cir. 1994) (*citing  Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993)); *see also Read v. BT Alex Brown*, 2003 WL 21754966 * 2 (5th Cir.), *cert. denied*, 2004 WL 323271 (U.S. February 23, 2004).

[25]*Oden v. Oktibbeha County,* 246 F.3d 458, 468 (5th Cir. 2001); *Medina v. Ramsey Steel Co., Inc*., 238 F.3d 674, 680-81 (5th Cir.2001).

position.  In this regard, plaintiff's only teaching positions held in an American school were to teach beginning biology (*i.e*., Biology 105 and 106).  Plaintiff had no research experience in the thirteen years predating her teaching contracts with SUNO.  In addition to degree requirements in the specialty areas of anatomy, physiology or genetics, the positions required extensive particularized scientific laboratory research and knowledge.  It is undisputed that plaintiff lacked both the requisite credentials in the specialty areas (Anatomy and Genetics) as well as related particularized scientific laboratory research and knowledge.

Plaintiff submits that there is "direct evidence" of discrimination without identifying any such instance of *direct* discrimination.[26]  At best, plaintiff musters only circumstantial evidence and therefore must rely on the *McDonnell Douglas* burden-shifting framework to create a presumption of discrimination.[27]  Essentially, plaintiff's argument is that in order to promote Dr. Yetunde Ogunkoye (a person who was of the same race, religion and national origin as Dr. Adegboye), he skewed the interview process and did not allow Dr. Mukerji the opportunity to interview for the position.

Plaintiff, a plant biologist, contends she was just as qualified for the advertised positions

---

[26]Direct evidence is evidence which, if believed, proves the fact in question without inference or presumption. *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir.2005); *Fabela v. Socorro Indep. Sch. Dist*., 329 F.3d 409, 415 (5th Cir.2003). In the employment discrimination context, this includes "any statement or document which shows on its face that an improper criterion served as a basis-not necessarily the sole basis, but a basis-for [an] adverse employment action." *Fabela*, 329 F.3d at 415 (*citing Fierros*, 274 F.3d at 192); *see also Acker v. Deboer, Inc*. 429 F.Supp.2d 828, 837 (N. D. Tex.,2006).  However, if an inference is required for the evidence to be probative as to an employer's discriminatory animus, the evidence is circumstantial, not direct. *See Wilber v. Tharaldson Employee Management Co.*, 2005 WL 3018262 *6 (N. D. Tex.2005) (*citing Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 897-98 (5th Cir.2002), *cert. denied*, 539 U.S. 926 (2003)).

[27]*See Rachid*, 376 F.3d 305, 312 (5th Cir. 2004).

as Dr. Ogunkoye. In this regard, Dr. Mukerji lists her qualifications and experience as follows, to wit: (1) B.S. in Biology and Botany; (2) Masters in Biology and Botany; (3) B.S. in Education; (4) Doctorate of Philosophy in Fossil Botany; (5) an Associate's Degree in Nursing; (6) Teaching Experience at the University of Burdwan from 1986 through 1989; (7) Biology Teacher at Delgado in 1992; (8) Teacher at St. Joseph Seminary in 1994; and (9) Teacher at UNO 2002.[28]

Plaintiff's conclusory argument that she was qualified for the tenure-track professor positions advertised (Anatomy/Physiology and Genetics) is insufficient for purposes of summary judgment.  It is undisputed that, notwithstanding plaintiff's lack of qualifications to assume the aforesaid positions, Dr. Adegboye "short-listed" plaintiff for the interview process in the event that there were an inadequate number of qualified applicants.   At the time that candidates were invited to interview for the positions, the Search Committee had not yet reviewed the qualifications of the "short-listed" candidates.  Dr. Ogunkoye (a Doctor of Veterinary Medicine) was the only other candidate short-listed to interview for the anatomy position.  In addition to Drs. Mukerji and Ogunkoye, approximately three others applied for the position.

The day prior to the scheduled interviews, the Search Committee convened a preliminary meeting for the purpose of pre-screening the applicants. In addition to Dr. Adegboye, the Search Committee consisted of the following professors, to wit:  Dr. Carl Johnson (Chair of Chemistry), Dr. Joe Omojola (Chair of Math and Physics), Dr. Murty Kambhampati (Plant Science) and Dr. Lisa Mims-Devizin (Biology/Microbiology).  Upon pre-screening, the Search Committee made the decision not to interview Dr. Mukerji because she was not qualified for either position.  The

---

[28] *See* Plaintiff's Statement of Undisputed Facts at Item 7 (citing her own deposition testimony).

Search Committee made this determination based upon their review of the dossiers of the applicants for both positions. Considering that a sufficient number of applicants met qualifications for the positions, members of the committee decided that there was no need to interview Dr. Mukerji, who was not qualified for either position.[29]  Dr. Adegboye notified plaintiff of the committee's decision the night prior to the scheduled interview.[30]

Dr. Adegboye precisely explained his reasons for "short-listing" the plaintiff (a *plant* biologist) even though she was clearly not qualified to fill either position (Anatomy/Physiology or Genetics), to wit:

> "I short-listed her, like I explained before without any contradiction, just in case we were not able to fill either position, I would definitely have pushed that we fill in a general biologist....  To be candid, I wanted the panel to interview her and assess her for me, so to speak, as a *general biologist.*"[31]

Dr. Ogunkoye also did not interview for the position of Anatomy/Physiology. The search committee found that she was qualified for the position based upon her resume and qualifications.  They took into consideration the fact that Dr. Ogunkoye was already employed by SUNO holding the NIH Grant position, which she had occupied since January of 2003.  Dr. Ogunkoye's qualifications include the following, to wit: (1) Doctor of Veterinary Medicine (DVM);  (2) Master of Science (MS) in Anatomy and Physiology; and (3) PhD in Anatomy and Physiology.[32]  Prior to filling the NIH Grant position at SUNO in the Spring of 2003, Dr. Ogunkoye taught anatomy at Morehouse.   She also had prior experience teaching anatomy at

---

[29]Deposition of Dr. Adegboye at pp. 68-76.

[30]Deposition of Dr. Adegboye at pp. 68-75.

[31]Deposition of Dr. Adegboye at p. 76.

[32]Deposition of Dr. Adegboye at p. 77-79.

Ahmadu Bello University in Zaria, Nigeria.[33]  Additionally, while filling the NIH Grant position at SUNO, Dr. Ogunkoye taught anatomy, physiology and general biology.

Clearly, the plaintiff, whose background is devoid of both teaching experience and graduate work in all three specialized fields, was not qualified for either position.[34]  It is the plaintiff's burden to show that she was qualified and she has failed to establish this *threshold burden.*  If SUNO's objective requirements were not applied to employees actually hired, it is the plaintiff's burden to show this in order to make these requirements inapplicable to the "qualification" determination at the *prima facie* stage.[35]  Because she has not done so, plaintiff has failed to demonstrate a  *prima facie* case of discriminatory failure to promote.

Moreover, plaintiff's evidence falls far short of that which is necessary to raise the inference that the reasons for the employment decisions at issue were merely a pretext and that unlawful discrimination was a motivating factor.  Her contentions are buttressed only by supposition and argument, not evidence.  The entire thrust of Dr. Mukerji's employment discrimination lawsuit is that she (a Hindu Asian female of Indian descent) was allegedly treated disparagingly by Dr. Adegboye, a Christian African-American male of Nigerian descent. Merely proving that a defendant's proffered reason is contrived is not sufficient to compel an inference that intentional discrimination occurred.[36]

It is undisputed by competent evidence that the female individual hired (Dr. Ogunkoye)

---

[33]Deposition of Dr. Adegboye at p. 81.

[34]*See* Qualifications Posted for Advertised Positions [Adegboye No. 4].

[35]*Johnson v. Louisiana,* 351 F.3d 616, 622-623, 625 (5th Cir. 2003).

[36]*See Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 146-47 (2000) (citing *St. Mary's Honor Center*, 509 U.S. at 524).

had far superior qualifying credentials which paralleled the advertised objective qualifications for the position, including a masters <u>and</u> a doctorate in anatomy <u>and</u> physiology, a doctorate in veterinary medicine, as well as current scientific laboratory experience from former professorships at other American research universities.  Plaintiff makes no attempt whatsoever to demonstrate that she was qualified for the tenure-track faculty position in the area of Genetics.

   This Court cannot ignore the undisputed fact that, despite plaintiff's lack of qualifications for either of the preferred position,  *Dr. Adegboye* (Search Committee Chair) recommended/short-listed her to interview for the "back up" position (General Biology).  This recommendation, undercuts, if not obviates, the plaintiff's contention that *Dr. Adegboye* failed to promote her on the basis of race, national origin , religion or for any other unlawfully discriminatory reason.  It is undisputed that the Search Committee overruled *Dr. Adegboye's* recommendation to interview Dr. Mukerji.  Plaintiff has adduced no competent evidence countering the fact that it was the Search Committee that made the decision to cancel her July 26, 2003 interview, because: (1) qualified individuals with the requisite specialty degrees applied for the advertised tenure-track faculty positions; (2) a general biology *back up* position was thus not available; and (3) therefore, an interview of Dr. Mukerji would serve no useful purpose and unnecessarily protract the interviewing process.

   In addition, it is uncontroverted that *Dr. Adegboye,* the individual who initially hired the plaintiff, later recommended her for advancement/promotion to the "fall back" position of general biologist and then gave her priority as a replacement for the vacated NIH Grant position vacated by Dr. Ogunkoye.  Any inference of quadruple-status discrimination is gravely weakened by the "same actor inference," which suggests that SUNO would not have hired

Mukerji (an Asian Hindu female of Indian descent) if it was discriminatory.[37]  Indeed, plaintiff

admits that she was ultimately promoted to the NIH grant position – *i.e.*, a year long contract

position.  Absent a *prima facie* case and evidence suggesting a discriminatory motive, no

reasonable trier of fact could find in favor of the plaintiff on her Title VII and state law claims of

discriminatory failure to promote.[38]  As to plaintiff's LEDL claim of discriminatory failure to

promote, it fails for same reasons explained above.

Alternatively, the Court finds that the defendant's prescription argument with respect to

plaintiff's Title VII failure to promote claim has merit.  For purposes of Title VII, prescription

began to run on June 26, 2003, which was the date upon which Dr. Mukerji was passed over for

promotion to the advertised positions.  Plaintiff did not file her EEOC complaint until more than

300 days later on May 28, 2004.

*Unequal Pay*

To establish a *prima facie* case of unequal pay under Title VII, a plaintiff must show

that: 1) she is a member of a protected class; 2) she performed work in a position requiring equal

skill, effort, and responsibility under similar working conditions, and 3) she was paid less than

the employee who is not a member of the protected class providing the basis of comparison.[39]

Plaintiff's unequal pay claim under Title VII fails because plaintiff has failed to present

---

[37]*See, e. g.*, *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir.1997).

[38]*Crawford v. Formosa Plastics Corporation*, 234 F.3d 899, 903-04 (5th Cir. 2000)
(noting that the critical issue is whether the plaintiff has met his burden of showing a genuine
issue of material fact as to whether the employment action was illegally motivated and that
determination is made "on a case-by-case basis, depending on the nature, extent, and quality of
the evidence, as to whether a jury could reasonably infer discrimination").

[39]*See Montgomery v. Clayton Homes, Inc.*, 2003 WL 1922917 * 1 (5th Cir. 2003).

14

evidence that the work she performed required equal skill, effort, and responsibility as the work performed by either Dr. Ogunkoye (Anatomy/Physiology/tenure track) or Mr. Williams. The Fifth Circuit has held that the job content and actual job requirements of the comparison position, not the job title, classification or description, are determinative.  It is a foregone conclusion that Dr. Ogunkoye's position cannot be considered a valid comparison.  In the NIH grant position in 2003, Dr. Ogunkoye taught anatomy, physiology and general biology.

Turning to Mr. Williams (an African American male), it is undisputed that he possessed neither a Doctorate or post-graduate degree.  It is further uncontroverted that he was hired by SUNO on an emergency basis mid-semester in the Fall of 2004 to fill the position of a professor who unexpectedly became too ill to teach.   Williams was not adjunct faculty, having been awarded a *temporary* instructor contract at *mid-semester*.  His contract required that he (1) teach an *overload of courses*; (2) teach at *night*; and (3) begin doing so at *mid-semester*.  Williams' hiring at mid-semester 2004 also presents an invalid basis of comparison because plaintiff has failed to demonstrate that she performed work in a position requiring equal skill, effort, and responsibility *under similar working conditions*.  In addition to the fact that plaintiff's contract did not require that she teach a *course overload*, it is undisputed that plaintiff was not required to teach *evening classes*.

As previously discussed and assuming a *prima-facie* case of unequal pay, Dr. Mukerji's conclusory allegations of pretext and/or unlawful discriminatory motive are insufficient for summary judgment purposes.  Plaintiff has failed to adduce even a scintilla of evidence that the reasons for awarding Williams' a temporary instructor contract at the salary level set forth therein were false.

15

*Unequal Access to University Assets*

The thrust of plaintiff's claim of unequal access is that she was denied equal access to office space, university labs and university equipment.  According to plaintiff's allegations and proof, she was required to vacate a tenured professor's office that she was using when he returned from sick leave.  Plaintiff describes the temporary office (formerly an equipment room) which she was then required to use as "deplorable."

There is no dispute that, within a month or two, plaintiff's office space was wired for phone, internet and digital communications.  In the interim, plaintiff had full access to any of the other phones and computers in the biology department and throughout the campus.   It is undisputed that the former equipment room which was assigned to Dr. Mukerji was the same or similar size and makeup as the other professor's offices and was cleaned out before plaintiff moved in.  Moreover, plaintiff has come forward with no evidence suggesting that any SUNO contract employees *with similar contract terms* had any more university assets at their disposal than the plaintiff.[40]

As to restricted access to the plant and molecular laboratories, it is undisputed that keys were restricted to supervisory and safety personnel.  Plaintiff has failed to adduce evidence that any other temporary professor had keys or unfettered access to these labs.  Dr. Mukerji has failed to come forward with competent evidence demonstrating that restricted access was imposed for any reason other than those addressing valid health and safety concerns.[41]   There is a complete

---

[40]*See* Deposition of Dr. Adegboye at pp. 248-253 (testifying that no other SUNO professors with similar contract terms or status as the plaintiff were provided with any more or less university assets than the plaintiff) [Plaintiff's Exhibit "A"].

[41]*Id.* at pp. 163, 265-266.

failure of proof  of disparate treatment (being denied "equal access to facilities") *based upon plaintiff's race, national origin, religion* or *sex.*.

*Hostile Work Environment*

To prove that she was unlawfully subjected to a hostile work environment, plaintiff must adduce evidence of the following elements of this claim, to wit:   (1) she belongs to a protected class;  (2) she was subject to unwelcome harassment;  (3) the harassment was *based on* her protected class status (sex, race, national origin and/or religion); and (4) the harassment affected a term, condition or privilege of employment.[42]

The plaintiffs must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable.[43]  The fact-finder must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance.[44]  To hold a defendant liable for a  hostile work environment, the conduct must be so severe or pervasive as to alter the terms or conditions of plaintiff's employment and create an abusive working environment.[45]

Plaintiff bases her hostile environment claim on the following conduct and remarks, to wit: (1) a verbal attack on April 19, 2004 by Dr. Adegboye's secretary who called Dr. Mukerji

---

[42]*See  Frank v. Xerox Corp.,* 347 F.3d 130, 138 (5th Cir.2003).

[43]*Id.* (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)).

[44]*Id.* (*citing Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir.2000)).

[45]*See Frank,* 347 F.3d at 138 (noting the record reflects no evidence of severe or pervasive harassment).

17

"crazy;"[46] (2) Dr. Adegboye's alleged instructions to his secretary to dump any papers tendered

by the plaintiff into the trash; [47] (3) alleged unequal access to university assets, including not

being given a key to the plant and molecular laboratories, being required to vacate a tenured

professor's office who returned from sick leave and being relegated to temporary office space in

a former equipment room which was not pre-wired with phone/internet access at the outset;[48] (4)

being exposed to a discourse on the *Christian* religion once during a long car ride with Dr.

Adegboye to an academic conference off-campus;[49] (5) Dr. Adegboye's alleged conduct (*i.e.*,

stomping into her room, using the paper cutter and throwing a piece of paper in the trash

receptacle while contemporaneously giving her a stern look);[50] and (6) formal memoranda and

emails responding to plaintiff's various work-related queries.[51]

---

[46]Deposition of Plaintiff at p. 394 [Defendant's Exhibit "1].

[47]*Id.*

[48]*Id.*, at pp. 199-122.

[49]*Id.*, at pp. 221-234

[50]*Id.*, at p. 394.

[51]*See* Deposition of Dr. Adegboye at Attachments 7, 10, 13 and 15 ([7]responding to plaintiff's queries that she was excluded from the Fall, 2004 teaching schedule because her contract expired in August, 2004 and there is no assurance of financial support thereafter who are not on a tenure-track appointment; [10] responding via formal memorandum to the plaintiff's March 30, 2004 email addressed to Adegboye accusing him of inconsistency in that he had allegedly previously verbally assured her of the renewal of her NIH grant position and noting in writing exactly his recollection of what had transpired in connection with hiring her, accommodations made in connection with that contract, and that continued funding of the NIH grant position was not a matter within his control; [13] responding to formal correspondence from LSU regarding the grant position addressing Dr. Mukerji's complaints about SUNO providing her adequate facilities and explaining that despite the fact that there are two laboratories available Dr. Mukerji's original enthusiasm has waned; and [14] responding to Dr. Mukerji's email issued near the end of the semester and final exams advising Dr. Adegboye that she (Mukerji) was not going to work for at least *a month per her physician's advice* and that she

Plaintiff has failed to make out a *prima facie* case of hostile work environment as required.[52]  The elements of proof are exactly the same under the LEDL.   Therefore, the court need not address the plaintiff's state law hostile environment claim separately.

The alleged conduct is not *severe* or *pervasive* within the meaning of the applicable law. Additionally, there is not so much as a hint of any connection with the *unlawfully* discriminatory motive of either sex, race, national origin or religion.[53]  Title VII and its counterpart in Louisiana law are not codes of general civility in the workplace.  There is not one iota of proof that any alleged workplace harassment was based upon any *unlawfully* discriminatory motive.[54] Plaintiff's opinions of the quality of her work, her work experience, her qualifications, her contract terms and her entitlement to university assets are insufficient to provide an inference of an *unlawful* discriminatory intent.[55]

"As the Fifth Circuit has noted, the issue at stake in an employment discrimination case is not whether the employer's decision was the correct decision or a fair decision or the best

---

planned to somehow handle final exams and grading *in absentia*).

[52]Under the Fifth Circuit's test, a workplace remark constitutes direct evidence of discrimination only if it is: (a) related to the protected class of persons of which the plaintiff is a member, (b) proximate in time to the employment decision at issue, (c) made by an individual with authority over the employment decision at issue, and (d) related to the employment decision at issue. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir.1996); *Laxton v. Gap, Inc.*, 333 F.3d 572, 583 n. 4 (5th Cir.2003).

[53]*See Travis v. Potter,*  2005 WL 2429397, *4 (W. D. La., 2005)

[54]*See id.* (noting that even if plaintiff was subject to some sort of unwelcome harassment, there is simply no evidence in the summary judgment record that even remotely suggests that any of the defendant's actions were based on plaintiff's race).

[55]*See Lawrence v. University of Texas Medical Branch at Galveston*, 163 F.3d 309, 312-13 (5th Cir. 1999).

decision; rather, the issue is whether the employer had a discriminatory motive."[56]  The summary judgment record is bereft of any proof that any illegitimate criterion (race, sex, national origin or religion) actually motivated Dr. Adegboye's or SUNO's decisions.

Moreover, it defies logic to suggest that Dr. Adegboye, who initially negotiated the teaching contracts with plaintiff in the Spring of 2003, invited her to interview for the *back-up* Biology Assistant Professor position and then gave plaintiff preference for the NIH grant position which opened in September, 2003, would later intentionally discriminate against her or harass her *on the basis of her sex, national origin, race or religion*.

In the case of alleged discriminatory termination, where the individual plaintiff's hiring and firing supervisor are one and the same, the Fifth Circuit has held that such a situation gives rise to an inference of non-discrimination.  The *Brown* court explained that it is unlikely that a decision maker "would hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job."[57]

In the final analysis, Dr. Mukerji's subjective perception of discriminatory motive is all that remains.  It has long been the law of the Fifth Circuit that an employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief.[58]  Where, as here, the employee fails to adduce evidence refuting a rational, non-discriminatory reason articulated by the employer, pretext cannot be established by the subjective belief that an

---

[56]*Weathersby v. Saks,* 1999 WL 148441 * 2 (E. D. La.) (McNamara, J.) (*citing Deines v. Tex. Dept. of Protection and Regulatory Services*, 164 F.3d 279, 282-82 (5th Cir. 1999)).

[57]*See Neito v. L & H Packing Co.,* 108 F.3d 621, 624 (5th Cir. 1997) (*citing Brown v. CSC Logic*, 82 F.3d at 658) (internal quotation marks omitted).

[58]*See Lawrence,* 163 F.3d at 313 (noting that "a subjective belief of discrimination, however genuine, may not be the basis of judicial relief").

illegitimate criterion (sex, race, religion or national origin) motivated the employer's decision.[59]
Dr. Adegboye's memorandum and e-mail responses concern the plaintiff's work related queries
which were addressed directly to him.  In responding as required, Dr. Adegboye recounts the
specifics regarding the Search Committee's decision to cancel her June 26, 2003 interview and
the particulars with respect to the paucity of university assets, *inter alia*.  His written responses
to plaintiff's email requests for information suffer from no lack of detail.

Suffice it to say, "discrimination suits still require evidence of discrimination."[60]
Looking at the summary judgment record as a whole, aside from the plaintiff's own subjective
belief, the Court concludes that the plaintiff has failed to advance a *scintilla of evidence* to
support an inference of intentional *gender*, *race, national origin or religious* discrimination.
Concomitantly, severe or pervasive workplace harassment based upon any of the aforesaid
unlawful criteria is similarly absent.

*Intentional Infliction of Emotional Distress*

In light of the foregoing, plaintiff's claim of intentional infliction of severe emotional
distress similarly fails.   Plaintiff's IIED claim is in effect an aggravated case of hostile
environment.  However, plaintiff fails to make out a *prima facie* case of hostile environment;
therefore, her IIED claim necessarily fails.  The essential elements of a claim for intentional
infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant which
exceeds the bounds of decency; (2) causes severe emotion distress; and (3) was either intended

---

[59]*See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995), *cert. denied*, 516 U.S. 1047 (1996).

[60]*Rubinstein v. Administrators of Tulane Educational Fund,* 218 F.3d 392, 400 (5th Cir. 2000).

or would be substantially certain to follow commission of the outrageous conduct.  Recognition

of a cause of action for  IIED in a workplace environment has generally been limited by

Louisiana courts to cases involving a pattern of deliberate, repeated harassment over a period of

time which results in severe suffering of an ilk that no reasonable person would be expected to

endure.[61]

<em>Discrimination on the Basis of Religion (Hindu)</em>

Plaintiff's claim of religious discrimination is limited to the one incident discussed

above involving Dr. Adegboye relating a religious story with *Christian* overtones.  The incident

occurred during a long car ride to a university function off campus.  Plaintiff's claim of religious

discrimination is made both under both Title VII and Louisiana Employment Discrimination

Law (LEDL), La. R. S. § 23:301, *et seq.*   Louisiana's statute provides that:

> It shall be unlawful discrimination in employment for an employer to engage in
> any of the following practices:
>
> (1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise
> to intentionally discriminate against any individual with respect to his
> compensation, or his terms, conditions, or privileges of employment, because of
> the individual's race, color, religion, sex, or national origin.[62]

Because of its doctrinal similarity to Title VII, and the related social goals of both

statutes, Louisiana courts routinely look to Title VII to interpret the LEDL.[63]  The state statute

does not define "religion," but Title VII provides that:

---

[61] *Ware v. Cleco Power, LLC,* 90 Fed.Appx. 705, 2004 WL 133869 * 4 (5th Cir. 2004) (*citing White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991)); *Smith v. Amedisys, Inc.,* 298 F.3d 434, 449 (5th Cir. 2002); *Bustamento v. J. D. Tucker*, 607 So.2d 532, 538 (La. 1992).

[62] La. R. S. 23:301.

[63] *La Day v. Catalyst Technology, Inc.*, 302 F.3d 474, 477 (5th Cir.2002).

22

The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.[64]

To establish a *prima facie* case of religious discrimination under the Title VII model, the plaintiff must prove that: 1) she had a bona fide religious belief that conflicted with an employment requirement; 2) she informed the employer of his belief; and 3) she was discharged or suffered an adverse employment decision for failing to comply with the conflicting employment requirement.[65]  This Court adopts the Title VII model to inform and give content to the state statute which does not expressly require reasonable accommodation to one's religious beliefs.

The plaintiff has failed to establish a *prima facie* case of discrimination under the Title VII model.  Plaintiff has identified no Hindu precept that she must follow that conflicted with any work requirement.  Moreover, plaintiff has failed to establish that she made SUNO aware of any such requirement when she was hired.  The only prohibitions which conflicted with any work requirement discussed with Dr. Adegboye was the proscription against teaching night time classes. This conflict was discussed by Dr. Adegboye and Dr. Mukerji at the time she  was hired to teach the Spring semester of 2003 .  The etiology of the conflict had nothing to do with the plaintiff's Hindu religion; rather, the proscription against classes after sundown were related to the facts that plaintiff resided in Slidell, Louisiana and that she had young children that needed her attention during the evening hours.  In any event, it is undisputed that Dr. Adegboye accommodated Dr. Mukerji's request for daytime classes only by rearranging the schedules of

---

[64]42 U.S.C. § 2000e(j).

[65]*Weber v. Roadway Express*, 199 F.3d 270, 273 (5th Cir.2000).

other faculty members.

*Retaliation*

The Court now turns to defendant's contention that the plaintiff cannot demonstrate a *prima facie* case of retaliation.  A charge of retaliation follows the *McDonnell Douglas* burden-shifting analysis and thus plaintiff must establish a *prima facie* case by demonstrating that (1) she engaged in activity protected by Title VII ; (2) an adverse employment action occurred; and (3) a causal link existed between participation in the protected activity and the adverse employment action.[66]

Once the plaintiff establishes her *prima facie* case, the defendant has the burden of production to articulate a legitimate nondiscriminatory reason for the adverse employment action.  If the defendant meets this burden, the ultimate question becomes whether  "'but for' the protected activity, the [adverse employment action] would not have occurred, notwithstanding the other reasons advanced by the defendant."[67]   The requirement of showing "but for" causation is more stringent than the minimal causation required to make the plaintiff's *prima facie* case.[68]

Aside from defendant's arguments regarding prescription and failure to exhaust (which

---

[66]*See Webb v. Cardiothoracic Surgery Associates of North Texas, P.A.*, 139 F.3d 532, 540 (5th Cir.1998).

[67]*Vadie v. Mississippi State University*, 218 F.3d 365, 374 (5th Cir.2000) (*quoting McMillan v. Rust College, Inc*., 710 F.2d 1112, 1116 (5th Cir.1983), *cert. denied*, 531 U.S. 1113 (2001)).

[68]*Hall v. Pitney Bowes, Inc*., 2004 WL 389093, at *10 (N. D. Tex., Feb.27, 2004).

are without merit insofar as the plaintiff's allegations of retaliation),[69] plaintiff has failed to adduce evidence that her *protected* activity motivated any employment decisions at issue. Indeed, there is a complete failure of proof with respect to the causal relationship between the May 28, 2004 filing of plaintiff's EEOC claim and the alleged retaliatory.  Plaintiff walked off of the job on April 19, 2004 and never returned.  Her EEOC complaint was not filed until well over a month after she left the SUNO campus.

Under Title VII, an employee has engaged in protected activity if she has (1) "*opposed* any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted or *participated* in any manner in an investigation, proceeding, or hearing under this subchapter."[70]   Here, the participation clause is not implicated at all.  More particularly, it is undisputed that, with respect to the incidents in question, there was no charge of *unlawful* discrimination and subsequent investigation, proceeding or hearing instituted until Dr. Mukerji filed an EEOC charge in June, 2004.

To satisfy the "opposition clause," plaintiff need not prove that SUNO's practices were actually unlawful; however, plaintiff must show that she had "'a reasonable belief that the employer was engaged in unlawful employment practices.'"[71]   Simply stated, a showing of a

---

[69]*See Cleveland v. Sam's West, Inc.,* 2005 WL 711612 at * 5 (E. D. La. March 22, 2005) (noting the governing Fifth Circuit law that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim when it grows out of an earlier charge).

[70]42 U.S.C. § 2000e-3(a)(emphasis added).  *See also Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-428 (5th Cir. 2000).

[71]*Byers,* 209 F.3d at 428 (*citing Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981).

subjective good faith belief is insufficient.[72]  Dr. Mukerji engaged in no investigation of the incidents and did not report discrimination based on race, religion, gender or sex to the Chancellor.

The record is devoid of any proof that Dr. Mukerji made any complaint of *unlawful* discrimination based of *sex, national origin, race*, or *religion* prior to filing her EEOC complaint. Dr. Mukerji's April 12, 2004 correspondence to the Chancellor does not mention unlawful discrimination based on either sex, race, national origin or religion.[73]  Plaintiff's correspondence states: (1) "He (Dr. Adegboye) *acts like a king*;" (2) "This is a protest against *deprivation* and *discrimination* done to an *American in America*;" and (3) "I (Dr. Mukerji) cannot write in one letter about all of the *injustices done to me by Dr. Adegboye as a chairperson using his power since when I stepped in this department as adjunct faculty* in Spring, 2003."[74]  There is not one reference to either gender, national origin, religion or race-based discrimination/harassment in the entire two page letter addressing injustices allegedly perpetrated by Dr. Adegboye (plaintiff's alleged harasser).

With respect to retaliation, proof of causation is also absent.  The Court recognizes that plaintiff's burden at the *prima facie* stage is not onerous; however, she must produce at least some evidence that the decision maker had knowledge of her *protected* activity.[75]  As the Fifth Circuit held in *Manning*:  "If the decisionmakers were completely unaware of the plaintiff's protected

---

[72]*Id*.

[73]*See* Adegboye Deposition at Attachment No. 9.

[74]*Id.* (all emphasis added)*.*

[75]*Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 883 n. 6 (5th Cir.2003) (*citing Medina v. Ramsey Steel Co., Inc*., 238 F.3d 674, at 684 (5th Cir.2001)).

activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity."[76]

Because plaintiff cannot establish that a causal link existed between her participation in any *protected* activity and any employment decision,  plaintiff's retaliation claim must fail. Under the circumstances here, involving EEOC activity post-dating the alleged adverse employment actions/decisions, no reasonable trier of fact could find in favor of the plaintiff.   For the same reasons, plaintiff's state law retaliation claim necessarily fails.  In summary, plaintiff has presented no evidence of *prior protected* activity.  Accordingly, summary judgment as to Mukerji's' retaliation claims are GRANTED.

## CONCLUSION

To properly bring a cause of action for employment discrimination, harassment or retaliation on the basis of race, sex, religion, national origin, or prior protected activity, the alleged victim must first establish a *prima facie* case of discrimination, harassment or retaliation. In this regard, the plaintiff has failed.  Accordingly and for all of the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is GRANTED and the plaintiff's case be dismissed in its entirety.

New Orleans, Louisiana, this <u>18th</u> day of December, 2006.

DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE

---

[76]*Id.* at 883, n. 6. *See also Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir.1999); *Reed v. Efficient Networks, Inc.*, 2004 WL 1717369 (N. D. Tex. July 30, 2004)(granting summary judgment on a retaliation claim).